IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAKALA KIERRA WRIGHT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-173-G-BN |
| | § | |
| FEDERAL BUREAU OF | § | |
| INVESTIGATION, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Plaintiff Makala Wright's *pro se* action against Defendant Federal Bureau of Investigation ("the FBI") has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish. The Court granted Wright leave to proceed *in forma pauperis* until judgment is entered. *See* Dkt. No. 4.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny Wright's summary judgment motion, grant the FBI's summary judgment motion, and dismiss this action.

## Background

This is a lawsuit brought by *pro se* Plaintiff Makala Wright, a private citizen, against the FBI pursuant to the Freedom of Information Act ("FOIA") and Privacy Act ("PA"). *See* 5 U.S.C. §§ 552, 552(a). Wright believes that she might have been "mistakenly placed on" the FBI's terrorist watchlist and asks the Court to compel the

FBI "to reveal [her] watchlist status." Dkt. No. 36 at 4-5. The FBI contends that it has "satisfied its obligations with respect to Wright's FOIA requests, and that the Court should therefore grant summary judgment in its favor and dismiss Wright's complaint." Dkt. No. 33 at 6.

In November 2019, Wright submitted two electronic requests under the FOIA and PA ("FOIPA") "requesting all records in regards to Makala Kierra Wright," including whether her "name is on any domestic terrorists lists or watchlist." Dkt. No. 31 at 32. In December 2019, the FBI sent a letter to Wright, informing her that it "conducted a search of the places reasonably expected to have records ... [but was] unable to identify records responsive to [Plaintiff's] requests." *Id.* at 39. Regarding Wright's request for watch list information, the FBI's response included a standard *Glomar* response, stating that "the FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2)." *Id.* at 41; *see also, e.g.*, *Blum v. Nat'l Sec. Agency*, No. A-09-CA-769-SS, 2010 WL 11537459, at *1 n.1 (W.D. Tex. Apr. 12, 2010) ("The term '*Glomar* response' originated in the case of *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976). The case concerned the existence of records regarding a ship named *Hughes Glomar Explorer*. The CIA claimed 'in the interest of national security' it could neither confirm nor deny the existence of records. *Id.* at 1012. Thus, an agency's response to a FOIA request, refusing to confirm or deny the existence of certain records has since become known as a *Glomar* response.").

In its letter, the FBI advised Wright that she could appeal the FBI's response,

and Wright subsequently appealed to the U.S. Department of Justice ("DOJ"). *See* Dkt. No. 31 at 7-8. The DOJ affirmed the FBI's actions in response to Wright's FOIPA requests, determining "that the FBI's action was correct and that it conducted an adequate, reasonable search for such records." *Id.* at 80. The DOJ also informed Wright that, if she was dissatisfied with the action on her appeal, she could "file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B)." *Id.*

After receiving the FBI's first response letter and submitting her appeal, Wright sent the FBI a facsimile with her social security number, which had not been provided in her initial FOIA request. *See id.* at 8 n.6. The FBI reopened Wright's FOIPA and conducted another search of the main files using Wright's full social security number, but it was unable to identify any responsive records. *See id.* at 8. The FBI sent another letter to Wright, informing her that "it was unable to identify law enforcement and/or administrative records responsive to Plaintiff's requests." *Id.* Once again, the FBI supplied an addendum to the letter with "standard responses to FOIPA requests, which included ... the FBI's watch list *Glomar* response." *Id.* at 8-9.

In January 2020, Wright filed this action requesting the FBI to produce records revealing her watchlist status. *See* Dkt. No. 3 at 2. In February 2020, the FBI conducted an additional search to confirm the adequacy of its initial searches and to locate indexed reference files, which "are mere mentions of the subject of a request in files to other individuals, organizations, events or activities." Dkt. No. 31 at 9. This search identified one five-page reference file, and, in May 2020, the FBI released this record to Wright, with certain information withheld pursuant to exemptions. *See id.*

The FBI also supplied Wright with its standard watchlist *Glomar* response and informed Wright that she could appeal the FBI's determination to the DOJ, but Wright did not appeal. *See id.*

In May 2020, both parties stipulated in their Joint Rule 26(f) Conference Report "that the key legal issues in the case will need to be presented to the Court in the form of a motion" and that "[t]ypically, FOIA/PA cases are resolved on a motion for summary judgment." Dkt. No. 26 at 8. In July 2020, both the FBI and Wright moved for summary judgment and filed further briefing. *See* Dkt. Nos. 30-36.

The FBI asserts that it satisfied its obligations regarding Wright's FOIPA request, because it conducted an adequate search and Wright's watchlist status was properly withheld under FOIA Exemption (b)(7)(E) and Privacy Act Exemption (j)(2). *See* Dkt. No. 33 at 6.

Wright, on the other hand, argues that the Court should order disclosure of Wright's watchlist status, because she could mistakenly be on the watchlist and withholding her watchlist status is unconstitutional. *See* Dkt. No. 36 at 4-5.

In response, the FBI contends that "there is no genuine dispute of material fact with respect to the appropriateness of the FBI's refusal to confirm or deny Wright's watchlist status." Dkt. No. 39 at 1. And Wright failed to respond to the FBI's Motion for Summary Judgment [Dkt. No. 30] and did not request an extension of the deadlines set. *See* Dkt. No. 40 at 2. The FBI argues that this failure to respond renders the facts undisputed and demonstrates judgment should be entered in the FBI's favor. *See id.*

**Legal Standards**

Under Federal Rule of Civil Procedure 56, summary judgment is generally proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Typically, the party seeking summary judgment bears the initial burden of "identifying those portions of the pleadings ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"In the FOIA context, however, the traditional [summary judgment] standard is modified because 'the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released.'" *Batton v. Evers,* 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Cooper Cameron Corp*, 280 F.3d at 543). Thus, the "FOIA's strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray,* 502 U.S. 164, 173 (1991). "If the movant bears the burden of proof on an issue ... he must establish beyond peradventure *all* of the essential elements of the claim ... to warrant judgment in his favor." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). Consequently, "[s]ummary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503,

511 (5th Cir. 2014). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

But, if a movant properly supports his motion for summary judgment, "the burden then shifts to the nonmovant to demonstrate a genuine issue of material fact, but the nonmovant cannot rely on the allegations in the pleadings alone." *Id.*; *see Celotex*, 477 U.S. at 324 ("Rule 56(e) ... requires the non-moving party to go beyond the pleadings."). "A party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record ... or ... showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1)). If the summary judgment evidence shows that an actual controversy exists, then "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The non-moving party must "set forth specific facts showing the existence of a genuine issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson,* 477 U.S. at 248. "As to materiality, the substantive law will identify which facts are material." *Id.* To establish that an issue of material fact is "genuine," a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005). But "[i]f there is contradictory evidence or evidence of agency bad faith, a court should not grant summary judgment for an agency." *Highland Capital Mgmt. v. Internal Revenue Serv.,* 408 F. Supp. 3d 789, 801 (N.D. Tex. 2019). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of

the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (1994). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

"[T]he traditional leniency afforded to a *pro se* plaintiff does not excuse [Wright] from her burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees.*, 709 F. App'x 243, 246 (5th Cir. 2017); *see Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("It is not unjustifiably onerous to require *pro se* parties to respond to proper motions for summary judgment."). "Although courts should advise *pro se* [parties] of procedural rules," the United States Court of Appeals for the Fifth Circuit has "held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices." *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)). Additionally, the complaint of a *pro se* litigant "can be considered as summary judgment evidence to the extent it comports with the requirements of [Rule] 56(e)." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

In this case, at issue is whether the FBI has met its summary judgment burden in justifying nondisclosure of Wright's watchlist status by establishing: (1) the adequacy of its search and (2) the applicability of the exemptions. Alternatively, the Court must determine whether Wright has met her summary judgment burden by

either: (1) pointing out a lack of evidence to support the FBI's case or (2) demonstrating that the FBI's actions were unconstitutional.

### Analysis

The Court should deny Wright's motion for summary judgment and grant the FBI's motion, because the FBI satisfied its summary judgment burden and Wright offered no controverting evidence or evidence of bad faith. Wright also failed to meet her summary judgment burden, because she did not point out an absence of evidence to support the FBI's case and failed to show that the FBI's actions were unconstitutional.

"[In determining whether] agency records were improperly withheld from the complainant ... the court shall determine the matter de novo." 5 U.S.C.A. § 552(a)(4). "The FOIA requires government agencies to make their records available to the public and embodies a general philosophy of full disclosure by the agency." *Driggers v. United States*, No. 3:11-cv-229-N, 2011 WL 2883283, at *1 (N.D. Tex. July 18, 2011). "Upon receipt of a request for records, the agency in question must make the requested records promptly available to the requesting party, unless the records fall under one of nine exemptions listed in the FOIA." *Id.* (construing 5 U.S.C. 552(a), (b)). "A district court can enjoin an agency from withholding agency records, and can order the production of those records, if they do not fall under any of the nine exemptions." *Id.* (construing 5 U.S.C. § 552(a)(4)(B); *cf. Goldgar v. Office of Admin., Exec. Office of the President*, 26 F.3d 32, 34 (5th Cir. 1994) (stating that federal jurisdiction to order the production of agency records requires a showing that the agency "(1) improperly

(2) withheld (3) agency records"). "[W]hen the Government withholds information from disclosure, the agency has the burden to prove ... that the information is exempt from disclosure." *Batton,* 598 F.3d at 175.

To satisfy its summary judgment burden, "the agency must establish that: (1) its search for the requested material is adequate; and (2) that each responsive document is either produced, unidentifiable, or exempt from production." *Highland Capital Mgmt.,* 408 F. Supp. 3d at 800. An agency may satisfy this obligation with detailed affidavits, which are "entitled to a 'presumption of legitimacy' unless there is evidence of bad faith in handling the FOIA request." *Batton*, 598 F.3d at 176 (quoting *U.S. Dep't of State,* 502 U.S. at 179). But "[t]he presumption of legitimacy ... does not relieve the withholding agency of its burden of proving that the factual information sought falls within the statutory exemption asserted." *Id.* "[B]ecause the burden to establish an exemption remains with the agency, the district court should not grant summary judgment based on a 'conclusory and generalized' assertion, even if the FOIA requester has not controverted that assertion." *Cooper Cameron Corp.*, 280 F.3d at 543 (quoting *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C.Cir.1999)).

"In applying this standard, [courts] are mindful of the purpose behind the FOIA." *Batton*, 598 F.3d at 175. "The basic purpose of the FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The FOIA was enacted "to pierce

the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal citations omitted). Accordingly, the FOIA has a "strong presumption in favor of disclosure," *U.S. Dep't of State,* 502 U.S. at 173.

## I.    <u>The FBI's Motion</u>

The FBI satisfied its summary judgment burden because it proved through its detailed affidavit that: (1) it conducted an adequate search and (2) Wright's watchlist status is exempt from disclosure. "Since the plaintiff failed to respond to the defendant's motion for summary judgment, the inquiry must be whether the facts presented by the defendants create an appropriate basis to enter summary judgment against the plaintiff." *Adams*, 465 F.3d at 164.

### A.    **Adequate Search**

Based on the FBI's affidavits and considering the lack of any contradictory evidence or evidence of bad faith, the FBI conducted an adequate search. "An agency may demonstrate that it conducted an adequate search by showing that it used 'methods which can be reasonably expected to produce the information requested.'" *Batton*, 598 F.3d at 176 (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The issue is not whether there are "any other documents possibly responsive to the request, but rather whether the *search* for those documents was adequate." *Highland Capital Mgmt.,* 408 F. Supp. 3d at 802.

As evidence of the adequacy of the search, the FBI appropriately relies on the detailed and non-conclusory affidavit of Michael G. Seidel, Acting Section Chief of the

FBI's Record/Information Dissemination Section ("RIDS"), Information Management Division ("the Seidel Declaration"). *See* Dkt. No. 31 at 1.

Seidel states that, "given its comprehensive nature and scope," the Central Records System ("CRS") is the "principal records system searched ... to locate information responsive to most FOIPA requests, because the CRS is where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest." *Id.* at 15. The FBI typically searches the CRS files using an index search methodology, because "index searches ... are reasonably expected to locate responsive material within the vast CRS." *Id.* There are two categories of entries in the general indices: (1) main entries and (2) reference entries. *See id.* at 11. At the administrative stage, the FBI's "policy is to search for and identify only 'main' files," because main CRS files are created for each individual "that is the subject or focus of an investigation." *Id.* at 11, 14. Reference files are records created for individuals who are "associated with the case but are not the main subject(s) or focus of an investigation." *Id.* at 11.

Seidel explains that, in response to Wright's FOIA requests and pursuant to RIDS policy, the FBI used the search terms "Makala Kierra Wright" and "Makala Wright" to search the main files of the Central Records System ("CRS"). *Id.* at 14. After this initial search, the FBI was unable to identify records in response to Wright's requests. *See id.* at 7. The DOJ affirmed the FBI's actions and determined that the FBI "conducted an adequate, reasonable search." *Id.* at 80. Seidel provides further support that the FBI performed an adequate search, because it conducted two

additional searches. *See id.* at 8-10. First, the FBI reopened Wright's FOIPA to conduct another search of the main files using her social security number but did not find relevant records. *See id.* at 8. The FBI also conducted a third search to locate reference files responsive to Wright's request, and this search identified one five-page reference file. *See id.* at 15-16. Even though the record was exempt from disclosure under the PA, the FBI released it to Wright "to achieve maximum disclosure," pursuant to the goals of the FOIA. *Id.* at 16.

Based on Seidel's affidavit and considering the lack of contradictory evidence or evidence of bad faith, these search methods could be "reasonably expected to produce the information requested" and were therefore adequate. *Batton,* 598 F.3d at 176.

Even though the Court is "under no obligation to sift through the record" to locate disputed issues of material fact, a review of the pleadings shows there are no disputed issues of fact regarding the adequacy of the FBI's search. Rather than providing "specific facts showing the existence of a 'genuine' issue," *Morris,* 144 F.3d at 377, Wright disagrees with the FBI's refusal to disclose her watch list status and makes hypothetical and unsubstantiated assertions that she could be on the watch list in error, *see* Dkt. No. 36 at 4.

Wright asserts that, "[a]lthough ... the Defendant stated that a thorough search was done pertaining to any records concerning the Plaintiff, and none were found, that statement cannot and should not be read as if the Plaintiff is or isn't included on the watchlist." Dkt. No. 36 at 4. But the adequacy of the search depends

not on whether there are watch list records "possibly responsive to the request, but rather whether the *search* for those documents was adequate." *Highland Capital Mgmt.,* 408 F. Supp. 3d at 802. Here, the possibility that Wright could be included on a watchlist does not make the FBI's search for records pertaining to Wright inadequate.

Although Wright seems to argue that the FBI performed the search in bad faith because "[t]here are several reports of FISA abuse within the FBI with no accountability," she fails to offer any supporting evidence or specific facts to support this assertion. *Id.* at 5. The FBI's Seidel Declaration is entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling Wright's FOIA request. *Batton*, 598 F.3d at 176. Wright's unsupported allegation of abuse amounts to an "[u]nsubstantiated assertion ... [that is] not sufficient to defeat a motion for summary judgment." *Brown,* 337 F.3d at 541.

Because Wright's unsubstantiated assertions fail to controvert the FBI's detailed affidavit, there is no genuine issue regarding the adequacy of the FBI's search.

### B.    Standard *Glomar* Response

The FBI also properly invoked a standard *Glomar* response as to Wright's request for watch list information. Dkt. No. 32 at 7. "[I]t is the FBI's practice in responding to first party FOIA requests ... to include a standard *Glomar* response that neither confirms nor denies the existence of any watchlist information," because "the mere acknowledgment of the existence or non-existence of responsive records

would trigger harm." *Id.* at 15; Dkt. No. 31 at 25.

The FOIA "mandates that an agency disclose records on request, unless they fall within one of nine exemptions. These exemptions are explicitly made exclusive and must be narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (construing § 552(a)(4)(B)). In FOIA cases, "[c]ourts generally will grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under exemptions." *Cooper Cameron Corp.*, 280 F.3d at 543.

While the Fifth Circuit has never directly addressed whether an agency may issue a *Glomar* response to a FOIA request, "other circuits have uniformly held that an agency may issue a *Glomar* response to a FOIA request when 'to confirm or deny the existence of records ... would cause harm cognizable under a FOIA exception.'" *Morgan v. Fed. Bureau of Investigation*, 2016 WL 7443397, at *3 (W.D. Tex. May 24, 2016) (quoting *Gardels v. CIA,* 689 F.2d 1100, 1103 (D.C. Cir. 1982)). And the Fifth Circuit and the United States Supreme Court have recognized that, "for 'an appropriate class of law enforcement records or information[,] a categorical balance may be undertaken' in determining whether the records should be exempt from disclosure; and in ruling categorically, the district court need not examine each document in particular." *Cooper Cameron Corp.,* 280 F.3d at 544 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 777 (1989)). A law enforcement document can be categorically exempt from disclosure if the agency identifies with specificity the type of law enforcement document that is categorically

exempt. *Compare Robbins Tire & Rubber Co.*, 437 U.S. at 224 (1978) (holding that "NLRB witness statements" are categorically exempt from disclosure), *with Batton*, 598 F.3d at 182 (holding that "certain documents" are not categorically exempt from disclosure because the agency must identify "the type of document").

Based on the affidavits provided by the FBI and the lack of controverting evidence or evidence of bad faith, a categorical *Glomar* response is appropriate in this context because "to confirm or deny the existence" of watchlist records would cause harm under Privacy Exemption (j)(2) and FOIA Exemption (b)(7)(E). *Morgan*, 2016 WL 7443397, at *3.

### 1.    Privacy Act Exemption (j)(2)

First, the FBI properly found that the information requested by Wright is exempt from disclosure under the Privacy Act Exemption (j)(2). Privacy Exemption (j)(2) protects "material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals." 5 U.S.C.A. § 552a(j)(2). The FBI's memorandum explains that Wright's watch list status should be withheld under this exemption because, "if watchlist records regarding Wright existed, they would relate to investigative matters that are part of the FBI's primary law enforcement mission." Dkt. No. 33 at 11. Such records would specifically further the FBI's "efforts to track, predict, and thwart terrorist activities." *Id.*

Wright did not respond to the FBI's motion, so the FBI's facts regarding how the watch list records "pertain ... to the enforcement of criminal law" are "considered

undisputed." 5 U.S.C.A. § 552a(j)(2); FED. R. CIV. P. 56(e). Regardless, on a review of the record, Wright raises no fact issue regarding whether Wright's watchlist status falls under Privacy Act Exemption (j)(2) and instead suggests that she could be on the watchlist in error. *See* Dkt. 36 at 4. Wright supports this assertion by stating she has no criminal history and mentioning a 2009 Inspector General report finding that "the FBI's terror watchlist contained a 35 percent error rate." Dkt. No. 36 at 4. Wright provides no citation information for this report and so does not sufficiently support her speculation that she is erroneously on the FBI's watchlist. *See id.* Because "unsupported speculations" are insufficient to defeat a summary judgment motion, *Brown,* 337 F.3d at 541, Wright's hypothetical assertions are insufficient to controvert the applicability of Privacy Act Exemption (j)(2).

### 2. FOIA Exemption (b)(7)(E)

Second, the FBI also properly found that the information requested by Wright is exempt from discovery under FOIA Exemption (b)(7)(E). FOIA Exemption (b)(7)(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... would disclose techniques and procedures for law enforcement investigations or prosecutions ... if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Because the text of FOIA exemption 7(e) exempts from disclosure records that 'could reasonably be expected to risk circumvention of the law,' the [FBI] 'does not have to prove that circumvention is a necessary result.'" *Highland Capital Mgmt.,* 408 F. Supp. 3d at 818 (quoting

*Mayer Brown, LLP v. I.R.S.,* 562 F.3d 1190, 1193 (D.C. Cir. 2009)). "Instead, the [FBI] need only show that there is a chance of a reasonably expected risk that the law would be circumvented if the information withheld is disclosed." *Id.*

As a threshold matter, Wright's watchlist status meets Exemption 7's requirement of being "compiled for law enforcement purposes," because "'the FBI is the primary investigative agency of the federal government with authority ... to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States." Dkt. No. 39 at 6. "The FBI's records concerning terrorist watchlists were compiled and created in furtherance of FBI's law enforcement, national security, and intelligence missions," and "information contained on the terrorist watchlist is used as a method and technique that has enabled the FBI to perform its core law enforcement and national security missions." *Id.* at 6-7.

In addition, the FBI established that Wright's watch list status is exempt from disclosure under Exemption (b)(7)(E), because watchlist records "would disclose techniques and procedures for law enforcement investigations" and "disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). As the FBI explains, if individuals know who is or is not on a watchlist, they can understand "what types of behavior are pertinent to placement on a watch list ... [allowing] them to develop countermeasures to conceal their activities and thwart efforts to interdict crime and protect the national security of the United States." Dkt.

No. 39 at 7. And confirming that an individual is on a watchlist "reasonably could be expected to compromise investigative operations ... [because it could] induce an individual to flee, destroy or hide evidence, [or] alter his or her own behavior." Dkt. No. 31 at 27. Disclosing one's watchlist status could "enable the targets of the watchlist ... to circumvent the ability of the FBI to effectively use this important law enforcement technique, therefore allowing circumvention of the law." Dkt. No. 39 at 7.

But "it is not sufficient for the FBI to issue a *Glomar* response ... to only certain requests (for example, those individuals who are on a watch list), because that differential treatment could itself be telling." *Id.* And, so, a standard *Glomar* response is appropriate, because "given the sensitive information contained in the watch list, the mere acknowledgement of the existence or non-existence of responsive records would trigger harm." Dkt. No. 31 at 25.

Since Wright did not respond to the FBI's motion, she fails to "go beyond the pleadings" to offer controverting evidence regarding the applicability of Exemption (b)(7)(E). *Celotex*, 477 U.S. at 324. Even if the court were to look at Wright's pleadings for controverting evidence regarding the applicability of Exemption (b)(7)(E), Wright fails to address whether watchlist records are used for a law enforcement purpose. And so the FBI's assertions of fact regarding this threshold element are considered undisputed. *See Adams*, 465 F.3d at 164 (The Court has no "duty to sift through the record in search of evidence to support [Wright's] opposition to summary judgment.").

The FBI has met its summary judgment burden, because it established

"beyond peradventure" that: (1) its search was adequate and (2) watchlist records fall under the exemptions. *Fontenot,* 780 F.2d at 1194. Because Wright failed to "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case," *Morris*, 144 F.3d at 380, the FBI is entitled to summary judgment, requiring that the Court dismiss Wright's lawsuit.

## II.    <u>Wright's Motion</u>

Wright's motion for summary judgment should be denied because she failed to show an absence of evidence supporting the FBI's assertions that they were justified in withholding Wright's watchlist status and she failed to establish that the FBI's actions were unconstitutional.

### A.    **FOIPA Requests**

Wright failed to meet her summary judgment burden regarding her FOIPA claim because she did not point out the absence of evidence supporting the FBI's case (1) that it performed an adequate search and (2) that Wright's watchlist status was exempt from production. Because the FBI bears the burden of proof at trial on the issues of adequacy of the search and applicability of the exemptions, Wright was not required to "produce evidence negating the existence of a material fact"; rather, Wright's summary judgment burden was "only [to] point out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Laboratories*, 919 F.2d 301, 303 (5th Cir.1990).

#### 1.    **Adequate Search**

First, Wright failed to point out the absence of evidence supporting the

adequacy of the FBI's search. Wright asserts that the sole purpose of her FOIA request was to obtain her watchlist status but that the FBI refused to disclose it. *See* Dkt. No. 36 at 4. But, as discussed above, the adequacy of the FBI's search does not depend on whether watchlist records on Wright might exist. *See Gahagan*, 147 F. Supp. 3d at 622 (quoting *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("The issue 'is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was adequate.'"). While Wright claims that the sole purpose of her FOIA request was to obtain her watchlist status, she wrote in her original requestL "Requesting all records in regards to Makala Kierra Wright ... that have been collected and shared with the FBI." Dkt. No. 31 at 31. She specifically lists: "data collection records," "surveillance reports," "records describing how to identify a domestic terrorist," and "if any information is withheld." *Id.* Wright fails to point out an absence of evidence supporting the adequacy of the FBI's search for these requested records. *See id.* To the contrary, Wright actually provides evidence supporting the adequacy of the search by pointing out that "the Defendant stated that a thorough search was done pertaining to any records concerning the Plaintiff, and none were found," and the DOJ "reiterated the initial FBI response." Dkt. No. 36 at 3.

### 2. Exemptions

Wright also failed to meet her summary judgment burden by neglecting to point out a lack of evidence supporting the applicability of Privacy Act Exemption

(j)(2) and FOIA Exemption (b)(7)(E).

### a.    Privacy Act Exemption (j)(2)

First, Wright fails to point out the absence of evidence in exempting watchlist records from disclosure under Privacy Act Exemption (j)(2). *See* 5 U.S.C.A. § 552a(j)(2) (protecting "material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals"). While Wright points out that she does not have a criminal history and speculates that she could erroneously be on the watchlist, this speculation does not "identify ... those portions of the pleadings ... which it believes demonstrate the absence of a genuine issue of material fact" regarding the FBI's case that watch list records categorically pertain to efforts of enforcing criminal law. *Celotex Corp.,* 477 U.S. at 323; *see* Dkt. No. 36 at 4.

### b.    FOIA Exemption (b)(7)(E)

Second, Wright fails to point out an absence of evidence regarding whether her watchlist status is exempt under FOIA Exemption (b)(7)(E). *See* 5 U.S.C. § 552(b)(7)(e) (protecting information that is: (1) "compiled for law enforcement purposes," (2) when such records "would disclose ... techniques and procedures for law enforcement investigations ... if such disclosure could reasonably be expected to risk circumvention of the law"). Wright fails to address whether the watchlist is compiled for law enforcement purposes. But she purportedly takes issue with whether disclosure of her watchlist status would risk circumvention of the law by pointing out that she has no criminal history and raising the possibility she could be on the watch

list in error. *See* Dkt. No. 36 at 4.

But Wright's lack of criminal history does not point out a lack of evidence supporting the FBI's claim that revealing any individual's watchlist status could "risk circumvention of the law." 5 U.S.C. § 552(b)(7)(e). Even if Wright's lack of criminal history pointed to an absence of evidence on the issue, the Seidel Declaration explains that watchlist disclosure risks circumvention of the law because revealing individuals' watchlist status "could enable the targets of the watch list to avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use this important law enforcement technique." Dkt. No. 39 at 7. Making an exception and disclosing watchlist status for those who are not on the watchlist would still risk circumvention of the law, even if those individuals are not criminals, because "that differential treatment could itself be telling." *Id.* Wright fails to point out a lack of evidence to support the reasonable risk of circumvention of law that could result from disclosing individuals' watchlist status.

### B.    Constitutional Claims

Finally, Wright fails to sufficiently support her assertion that the FBI's "withholding of requested records is unconstitutional." Dkt. No. 3 at 4. In Wright's complaint, the only support Wright provides for her broad "unconstitutional" claim is a Virginia district court case in which plaintiffs' inclusion on a watch list violated their procedural due process rights. *See* Dkt. No. 3 at 4; *Elhady v. Kable*, 391 F. Supp. 3d 562, 584-85 (E.D. Va. 2019) (holding that the agency "fail[ed] to provide constitutionally sufficient procedural due process"). In her memorandum, Wright also

claims that inclusion on the watch list "would be a violation of the Plaintiff's Fourth and Fourteenth Amendment right." Dkt. No. 36 at 4.

When ruling on Wright's summary judgment motion, the Court must focus on the claims Wright has pled in her complaint. *See* FED. R. CIV. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). *Cf.* FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

Because Wright "bears the burden of proof on [her unconstitutionality claims] ... [s]he must establish beyond peradventure *all* of the essential elements of the claim ... to warrant judgment in [her] favor." *Fontenot,* 780 F.2d at 1194. "Summary judgment must be granted against [Wright if she] fails to make a showing sufficient to establish the existence of an element essential to [her] case." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014). Focusing only on the claims raised in Wright's complaint and construing the complaint "as to do substantial justice," at issue is whether Wright has established all the essential elements of her purported procedural due process claim. FED. R. CIV. P. 8(f).

Wright did not meet her summary judgment burden regarding her procedural due process claim, because she failed to identify a liberty-related or property-related interest at stake in her complaint. The Due Process clause provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." U.S. CONST.

amend. V; *see* U.S. CONST. amend. XIV ("No state shall ... deprive any person of life, liberty, or property, without due process of law.") Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To determine whether due process applies in the first place, "the nature of the interest at stake ... [must be] within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 92 n.21 (1972)).

Wright failed to provide any evidence of adverse consequences she has suffered that implicate a liberty or property interest. The case that Wright cites to support her due process claim, *Elhady v. Kable,* is distinguishable because the plaintiffs identified "movement-related interests" and "reputational interests" implicated by their erroneous inclusion on a watchlist. *Elhady,* 391 F. Supp. 3d at 577-79. Unlike Wright's situation, the *Elhady* plaintiffs' "inclusion in the [watchlist could] be inferred from a range of adverse consequences they ... suffered," such as "travel-related difficulties" and "enhanced screening," and these consequences deprived them of their liberty interests. *Id.* at 575. In a similar case, this Court held that plaintiffs' "movement-related interests" and "reputational interests" were also implicated from their erroneous placement on a watchlist based on accounts of "humiliating searches," "long interrogations," and confiscated items. *Kovac v. Wray*, 363 F. Supp. 3d 721, 735-36 (N.D. Tex. 2019). Unlike the plaintiffs in these cases, Wright fails to cite any

"adverse consequences" that could implicate any liberty interests or cause her to "reasonably infer" she is on a watchlist. *Elhady*, 391 F. Supp. 3d at 575. And so Wright did not establish "beyond peradventure" this essential element of her due process claim and is not entitled to summary judgment. *Fontenot,* 780 F.2d at 1194.

Based on Wright's unsubstantiated assertions, Wright has not met her summary judgment burden of establishing that the FBI's withholding of her watchlist status is improper under the FOIA or the Constitution, and the Court should thus deny Wright's motion.

## Recommendation

The Court should deny Plaintiff Makala Wright's Motion for Summary Judgment [Dkt. No. 34], grant Defendant FBI's Motion for Summary Judgment [Dkt. No. 30], and dismiss this action.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 13, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE